# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| DOUGLAS RIDDLE, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 4:22-cv-00469-DGK ) |
| WELLS FARGO BANK, N.A., et al., | ) ) ) |
| Defendants. | ) |

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

This case arises from a dispute over residential property in Kansas City, Missouri. Plaintiff Douglas Riddle alleges Defendant Specialized Loan Servicing ("SLS") improperly tried to enforce notes and deeds of trust to a property he rightfully owns free and clear.

Plaintiff filed a lawsuit in state court, and the case was subsequently removed. Plaintiff's amended complaint alleges seven claims including: quiet title (Count I); declaratory judgment (Count II); unjust enrichment (Count III); intentional infliction of emotional distress (Count IV); negligent infliction of emotional distress (Count V); slander of title (Count VI); and violations of the Fair Debt Collection Practices Act (Count VII). ECF No. 40. Plaintiff has since voluntarily dismissed Count VII with prejudice. ECF No. 144. SLS filed a counterclaim for quiet title (Counterclaim I), declaratory judgment (Counterclaim II), and judicial foreclosure (Counterclaim III). ECF No. 39. SLS is the only defendant remaining in this suit.

Now before the Court are the parties' cross motions for summary judgment, ECF Nos. 137, 139, and SLS's motion to strike Plaintiff's expert witnesses, ECF No. 135. SLS seeks summary judgment on all Plaintiff's remaining claims and on Counterclaim III. Plaintiff seeks summary judgment on Counts I and II and Counterclaim III. For the following reasons, SLS's motion for

summary judgment is GRANTED, Plaintiff's motion for summary judgment is DENIED, and SLS's motion to strike Plaintiff's expert witnesses is DENIED AS MOOT.

Within thirty (30) days of this Order, SLS shall submit a proposed judgment of foreclosure reflecting the rulings set forth below.

**Standard**

A movant is entitled to summary judgment if he "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those facts "that might affect the outcome of the suit under the governing law," and a genuine dispute over material facts is one "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A court makes this determination by viewing the facts in the light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor. *Tolan v. Cotton*, 572 U.S. 650, 656 (2014); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 588–89 (1986). "In reaching its decision, a court should not weigh the evidence, make credibility determinations, or attempt to determine the truth of the matter." *Leonetti's Frozen Foods, Inc. v. Rew Mktg., Inc.*, 887 F.3d 438, 442 (8th Cir. 2018). To survive summary judgment, the nonmoving party must substantiate his allegations with "sufficient probative evidence that would permit a finding in his favor based on more than mere speculation, conjecture, or fantasy." *Mann v. Yarnell*, 497 F.3d 822, 825 (8th Cir. 2007) (internal quotations and citations omitted).

**Undisputed Material Facts**

To resolve the motion, the Court must first determine the material undisputed facts. The Court has limited the facts to those that are undisputed and material to the pending summary judgment motions. *See* Fed. R. Civ. P. 56(c); L.R. 56.1(a). The Court has excluded legal

2

conclusions, argument presented as fact, and proposed facts not properly supported by the record or admissible evidence. *See* Fed. R. Civ. P. 56(c); L.R. 56.1(a). However, the Court has included inferences from undisputed material facts and facts the opposing party has not controverted properly. *See* Fed. R. Civ. P. 56(c); L.R. 56.1(a).

On May 19, 2004, the property located at 4524 Bell Street, Kansas City, Missouri 64111 (the "Property") was conveyed to Richard Riddle and Diane Riddle, husband and wife, and Plaintiff, a single person, by way of Warranty Deed. Richard and Diane are Plaintiff's parents. Pursuant to the Warranty Deed, the Property was conveyed to Plaintiff and his parents as joint tenants with the right of survivorship.

In connection with the purchase of the Property, Richard and Diane executed a note dated May 19, 2004, in favor of Wells Fargo Bank, N.A. ("Wells Fargo") in the principal amount of $108,200.00 (the "2004 Loan"). Plaintiff did not sign the 2004 Loan. To secure the 2004 Loan, Richard, Diane, and Plaintiff all executed a Deed of Trust dated May 19, 2004, to Wells Fargo (the "2004 Deed of Trust"). The 2004 Deed of Trust was recorded in the Jackson County land records on May 21, 2004.

On January 28, 2014, Richard and Diane refinanced the 2004 Loan and executed a note dated January 28, 2014, in favor of Wells Fargo in the principal amount of $92,500 (the "2014 Loan"). As before, Plaintiff did not sign the 2014 Loan. To secure the 2014 Loan, Richard and Diane executed a Deed of Trust dated January 28, 2014, to Wells Fargo (the "2014 Deed of Trust"). The 2014 Deed of Trust was recorded in Jackson County land records on February 6, 2014. Plaintiff did not sign the 2014 Deed of Trust, but it recognized him as a joint tenant of the Property alongside Richard and Diane. As a result of refinancing the 2004 Loan, the 2004 Deed of Trust held by Wells Fargo was released.

3

Case 4:22-cv-00469-DGK   Document 155   Filed 05/22/24   Page 3 of 11

Richard passed away on July 14, 2019.

Four days later, on July 18, 2019, Diane executed a quitclaim deed to Plaintiff for any interest she may have in the Property (the "2019 Quitclaim Deed"). The 2019 Quitclaim Deed was recorded in the Jackson County land records on July 23, 2019.

On October 10, 2019, Wells Fargo sent Diane a demand letter, notifying her that she was in default for failing to make payments due on the 2014 Loan. The first unpaid payment had been due August 1, 2019. Wells Fargo demanded Diane cure the default by paying the total delinquency on the 2014 Loan. Diane did not cure the default, nor did anyone else cure the default.

Diane passed away on February 13, 2020. Diane did not tell Plaintiff about the 2019 Quitclaim Deed before she passed away. Instead, Plaintiff learned about the 2019 Quitclaim Deed sometime in April 2020. Plaintiff cannot speak to Diane's intent to transfer the Property to him via the 2019 Quitclaim Deed.

On March 11, 2021, Wells Fargo assigned its rights, title, and interest in the 2014 Loan and 2014 Deed of Trust to SLS. The assignment was recorded in the Jackson County land records that same day. Since that time, the 2014 Loan remains in default.

During 2021 and 2022, SLS sent communications about the 2014 Loan addressed to the then deceased Richard and Diane. In June 2021, SLS sent a notice of default and notice of intent to foreclose. From December 2021 through March 2022, SLS attempted to send Diane notices concerning a potential payoff of the 2014 Loan. As best the Court can tell, Plaintiff occupied the Property and received these communications.

Plaintiff alleges SLS's communication about the 2014 Loan caused him emotional distress. The parties agree Plaintiff has no evidence of any telephone calls made to him by SLS. Plaintiff was home, however, for one visit by an SLS representative. During this visit, the SLS

representative made no physical or verbal threats against Plaintiff. The SLS representative told Plaintiff that the reason for his visit was to ensure the property was not abandoned. Plaintiff understands that SLS's communications concerned the collection of a debt and were not intended to cause him emotional distress.

Plaintiff is the current owner and occupant of the Property.

## Discussion

### I. SLS is entitled to summary judgment on Count I.

Plaintiff seeks quiet title to the Property. Under Missouri law, the plaintiff in a quiet title action "has the burden to prove title superior to the other party . . . and must prevail on the strength of its own title and not on any weakness in the title of the other party." *Ollison v. Vill. of Climax Springs*, 916 S.W.2d 198, 203 (Mo. 1996) (en banc).

Before addressing Plaintiff's quiet title claim, it is appropriate to set out Plaintiff and Diane's respective interests in the Property immediately following Richard's death. Upon Richard's death in August 2019, his one-third interest in the Property was split evenly between Plaintiff and Diane by virtue of the joint tenancy. *See In re Gerling's Est.*, 303 S.W.2d 915, 917 (Mo. 1957) (noting that "by virtue of the right of survivorship the entire estate, upon the death of any one of the joint tenants, goes to the survivors, and so on to the last survivor") (internal quotation omitted)). Because Diane executed the 2014 Loan and 2014 Deed of Trust, her one-half interest in the Property was encumbered by the 2014 Deed of Trust. Conversely, because Plaintiff neither executed the 2014 Loan nor the 2014 Deed of Trust, and the 2004 Deed of Trust was released, his one-half interest in the Property was unencumbered.

The question of superior title between Plaintiff and SLS turns on whether Plaintiff took Diane's one-half interest in the Property via the 2019 Quitclaim Deed or through his right of survivorship upon her death. This determination depends on whether the 2019 Quitclaim Deed

5

was a valid conveyance of Diane's encumbered interest in the Property. If the 2019 Quitclaim Deed was valid, then Plaintiff took Diane's interest *subject to* the 2014 Deed of Trust and has inferior title to SLS. *See Thompson v. Chase Manhattan Mortg. Corp.*, 90 S.W.3d 194, 201 (Mo. Ct. App. 2002) (noting a quitclaim deed conveys the grantor's interest subject to any encumbrances); *Di Pasco v. Prosser*, 274 S.W.2d 279, 283 (Mo. 1954) (same). If the 2019 Quitclaim Deed was invalid, however, Plaintiff took Diane's interest free and clear as a joint tenant through the right of survivorship and has superior title to SLS. *See Home Tr. Mercantile Bank v. Staggs*, 714 S.W.2d 792, 795 (Mo. Ct. App. 1986) (noting encumbrances are extinguished when a joint tenant's interest is transferred through the right of survivorship); *In re Gerling's Est.*, 303 S.W.2d at 917 (same).

A valid deed requires "(1) names of the parties thereto, (2) words of grant, (3) description of the property, (4) execution and delivery by the grantor, and (5) acceptance by the grantee." *Celtic Corp. v. Tinnea*, 254 S.W.3d 137, 142 (Mo. Ct. App. 2008). For purposes of the present motion, only the fourth and fifth elements are at issue.

SLS argues the 2019 Quitclaim Deed was a valid conveyance of Diane's encumbered interest because it was both "delivered" and "accepted." Plaintiff argues the 2019 Quitclaim Deed was never "delivered" because he did not become aware of it until after Diane's death. Plaintiff does not discuss "acceptance" in either his motion for summary judgment or his opposition to SLS's motion for summary judgment. Accordingly, Plaintiff has conceded the issue of acceptance for purposes of summary judgment. *See Chay-Velasquez v. Ashcroft*, 367 F.3d 751, 756 (8th Cir. 2004) ("Since there was no meaningful argument on this claim in his opening brief, it is waived."); *Satcher v. Univ. of Arkansas at Pine Bluff Bd. of Trustees*, 558 F.3d 731, 735 (8th Cir. 2009) (stating the "failure to oppose a basis for summary judgment constitutes waiver of that argument").

6

Accordingly, the Court discusses only whether the 2019 Quitclaim Deed was delivered.

The delivery of a deed "signifies that dominion and control over the deed passes from the grantor to the grantee with the intention to transfer the present ownership or interest in the land from the one to the other." *LeMehaute v. LeMehaute*, 585 S.W.2d 276, 279 (Mo. Ct. App. 1979). Although recording a deed does not establish delivery, it creates a rebuttable presumption of delivery. *Hoefer v. Musser*, 417 S.W.3d 330, 338 (Mo. Ct. App. 2013). The burden to prove non-delivery "is upon the party seeking to invalidate the deed." *Id.*; *Pollock v. Brown*, 569 S.W.2d 724, 734 (Mo. 1978) (en banc). As the party with the burden to prove non-delivery, Plaintiff can rebut the presumption with evidence of the grantor's intent. *Greuter v. Wetekamp*, 172 S.W.3d 822, 825 (Mo. Ct. App. 2005). That is, Plaintiff must present some evidence showing Diane did not intend to transfer her present interest in the Property to him via the 2019 Quitclaim Deed.

It is undisputed that the 2019 Quitclaim Deed was recorded on July 23, 2019. Thus, delivery is presumed. Plaintiff has not carried his burden rebutting this presumption. Plaintiff offers no evidence concerning Diane's intent to transfer the Property to him via the 2019 Quitclaim Deed. Because the presumption stands, the 2019 Quitclaim Deed was a valid conveyance of Diane's encumbered interest in the Property. Thus, SLS has superior title to Plaintiff.

Accordingly, SLS is entitled to summary judgment on Count I.

## II.     SLS is entitled to summary judgment on Count II.

Plaintiff seeks a declaratory judgment finding SLS's interest in the Property under the 2014 Loan and 2014 Deed of Trust have been extinguished, that he is the owner of the Property in fee simple, and to enjoin SLS from asserting any right in the Property superior to his. Because the Court finds in favor of SLS on Count I, it does so under Count II as well.

### III. SLS is entitled to summary judgment on Count III.

Plaintiff brings a claim for unjust enrichment based on of SLS's asserted interest in the Property. Under Missouri law, an unjust enrichment claim requires: "(1) the plaintiff conferred a benefit on the defendant; (2) the defendant appreciated the benefit; and (3) the defendant accepted and retained the benefit under inequitable and/or unjust circumstances." *Binkley v. Am. Equity Mortg., Inc.*, 447 S.W.3d 194, 199 (Mo. 2014) (en banc). The focus of an unjust enrichment claim "is not on the loss sustained by the plaintiff, but on the benefit to the defendant." *Autumn Lakes Ass'n v. Tran*, 655 S.W.3d 442, 449 (Mo. Ct. App. 2022) (citation omitted).

Plaintiff's unjust enrichment claim fails before it begins. Plaintiff offers no evidence of a benefit conferred to SLS. Plaintiff states only that he

> has shown undisputed facts that a benefit has been claimed by SLS and that SLS has inequitable [sic] claimed a benefit of a claim of interest pursuant to a contract wherein Plaintiff was not a party to the detriment of Plaintiff in both the value to Plaintiff's Property, SLS has frozen Plaintiff's ability to utilize his equity in the Property and/or sell the Property, and caused Plaintiff to incur damages, costs, and attorney fees far exceeding any unfounded claim of SLS in and to Plaintiff's Property.

Suggestions in Opp'n at 16, ECF No. 148. While Plaintiff identifies purported losses he has sustained, it is unclear what benefit, if any, he conferred to SLS. More importantly, it is unclear what undisputed facts support the alleged benefit to SLS. Simply asserting a property interest—even if Plaintiff believes it to be unfounded—does not constitute a benefit conferred to SLS by Plaintiff.

Accordingly, SLS is entitled to summary judgment on Plaintiff's unjust enrichment claim.

### IV. SLS is entitled to summary judgment on Count IV.

Plaintiff brings a claim for intentional infliction of emotional distress allegedly caused by SLS's communication concerning the 2014 Loan. Under Missouri law, a claim for intentional

infliction of emotional distress requires "(1) the defendant acted intentionally or recklessly; (2) the defendant's conduct was extreme and outrageous; and (3) the conduct caused severe emotional distress resulting in bodily harm." *Diehl v. Fred Weber, Inc.*, 309 S.W.3d 309, 321 (Mo. Ct. App. 2010). As to the first element, Plaintiff must provide sufficient evidence showing SLS's conduct was "intended only to cause extreme emotional distress to [Plaintiff]." *See Gibson v. Brewer*, 952 S.W.2d 239, 249 (Mo. 1997) (en banc) (citation omitted) .

Again, Plaintiff's claim fails before it begins. Plaintiff provides no evidence that SLS's communication concerning the 2014 Loan was intended only to cause him emotional distress. In fact, Plaintiff acknowledges SLS's communications concerned debt collection and were not intended to cause him emotional distress. Plaintiff's admission belies his claim.

Accordingly, SLS is entitled to summary judgment on Plaintiff's intentional infliction of emotional distress claim.

## V. SLS is entitled to summary judgment on Count V.

Plaintiff brings a claim for negligent infliction of emotional distress allegedly caused by SLS's communication concerning the 2014 Loan. Under Missouri law, "[a]ny action for negligence requires the plaintiff to establish that the defendant had a duty to protect the plaintiff from injury, the defendant failed to perform that duty, and the plaintiff's injury was proximately caused by the defendant's failure. *Jarrett v. Jones*, 258 S.W.3d 442, 448 (Mo. 2008) (en banc). Further, negligence claims seeking emotional distress damages require proof that "(1) the defendant should have realized that his conduct involved an unreasonable risk of causing the distress and (2) the emotional distress or mental injury must be medically diagnosable and must be of sufficient severity so as to be medically significant." *Id.*

SLS argues, in part, that summary judgment is appropriate because it did not owe Plaintiff a duty under Missouri law. Plaintiff does not respond to SLS's arguments. Aside from citing the

9

elements of a negligence claim, Plaintiff states only that "[t]here exist genuine issues of material fact where reasonable minds could differ, and this is a question of fact for a jury." *See* Suggestions in Opp'n at 20. By failing respond SLS's arguments, Plaintiff has conceded that no duty exists, and it not the Court's responsibility to conduct legal research or construct legal arguments for Plaintiff. *See Satcher*, 558 F.3d at 735; *United States v. Guzman-Tlaseca*, 546 F.3d 571, 578 (8th Cir. 2008).

Accordingly, SLS is entitled to summary judgment on Plaintiff's negligent infliction of emotional distress claim.

### VI. SLS is entitled to summary judgment on Count VI.

Plaintiff brings a claim for slander of title based on of SLS enforcing its interest in the Property. Under Missouri law, a slander of title claim requires Plaintiff prove "(1) an interest in the property, (2) that the words published were false, (3) that the words were maliciously published, and (4) that the plaintiff suffered pecuniary loss as a result of the false statement." *Erickson v. Nationstar Mortg., LLC*, 31 F.4th 1044, 1048 (8th Cir. 2022) (citations and internal quotations omitted). Under the third element, "[t]o infer the existence of malice, the evidence of plaintiff[] must support a reasonable inference that the representation not only was without legal justification or excuse, but was not innocently or ignorantly made." *Tongay v. Franklin Cnty. Mercantile Bank*, 735 S.W.2d 766, 770 (Mo. Ct. App. 1987).

SLS argues summary judgment is appropriate because Plaintiff cannot prove the last three elements of his claim. Specifically, SLS argues Plaintiff cannot show malice because it had legal justification to pursue its interest in the Property. Again, Plaintiff does not respond to any of SLS's arguments. But even if Plaintiff had not conceded the issue, *see Satcher*, 558 F.3d at 735, SLS clearly had legal justification to pursue its interest in the Property. *See supra* Section I (finding in favor of SLS on Plaintiff's quiet title claim).

10

Accordingly, SLS is entitled to summary judgment on Plaintiff's slander of title claim.

**VII.    SLS is entitled to summary judgment on Counterclaim III.**

SLS seeks judicial foreclosure arguing it holds a valid interest in the Property and the 2014 Loan is in default. "For the statutory right of action of judicial foreclosure, a party must hold a valid security interest in the real estate at issue." *Kroner Invs., LLC v. Dann*, 583 S.W.3d 126, 131 (Mo. Ct. App. 2019) (citing Mo. Rev. Stat. § 443.190); *see also JP Morgan Chase Bank, N.A v. Nevius*, No. 17-CV-04205-BCW, 2020 WL 12688132, at *5 (W.D. Mo. Sept. 28, 2020) ("The holder of the debt or obligation under both a mortgage with a power of sale and a deed of trust is the party entitled to enforce the Note and foreclose." (cleaned up)).

The parties do not dispute SLS is the holder of the 2014 Deed of Trust or that the 2014 Loan is in default. Clearly, SLS has a statutory right to foreclose on the Property and is therefore entitled to summary judgment on Counterclaim III.

**Conclusion**

For the foregoing reasons, SLS's motion for summary judgment is GRANTED, Plaintiff's motion for summary judgment is DENIED, an SLS's motion to strike Plaintiff's experts is DENIED AS MOOT.

Within thirty (30) days of this Order, SLS is shall submit a proposed judgment of foreclosure to the Courtroom Deputy via email reflecting the rulings set forth above.

**IT IS SO ORDERED.**

Date:   May 22, 2024                                  /s/ Greg Kays
                                                      GREG KAYS, JUDGE
                                                      UNITED STATES DISTRICT COURT